Wilde J.
afterwards drew up the opinion of the Court. This is an action of the case for obstructing and filling up a certain creek or watercourse adjoining a messuage and lot of land belonging to the plaintiff, but which at the time of the injury complained of was in the occupation of a tenant for a term of years. The declaration alleges, that the creek was a navigable creek, or arm of the sea, in which the tide daily ebbed and flowed ; and that the plaintiff, and those whose estate he has had, for more than sixty years enjoyed the right, as appurtenant to his messuage, to pass and repass in boats and other vessels, in the creek, to and from the messuage to the sea, until he was obstructed in the enjoyment of that right and.privilege by the defendants. The declaration also alleges, that by filling up the creek and stopping the flow and reflow of the waters, noisome and offensive smells had been generated, *197 and that by reason thereof his tenant had refused to pay the accustomed rent for the messuage, and threatened to quit the same in consequence of the premises. And furthermore, that the plaintiff had been generally deprived of the use, benefit and advantage of the waters flowing and reflowing through the creek as they were accustomed to do before the obstruction complained of.
In the defence it was proved, that for a long time previous to the acts complained of, the creek had become foul by reason of the discharge of offensive matter into it from the drains belonging to the adjoining estates, and from common sewers built under the direction of the municipal authorities, and by putrid vegetable and animal remains thrown into it, so that it was a nuisance and injurious to the health of the inhabitants , that complaints to this effect had been from time to time made to the town and city authorities ; that different plans were suggested for remedying the evils complained of, but that none was deemed so eligible as the filling up of the creek ; and that at length, after due consideration, it was decided by the city authorities to begin the execution of that plan, which was accordingly done under their direction ; that the filling up of the southerly end from Marginal Street to Ann Street was completed in the spring of 1829 ; and that in July of the same year it was determined by the mayor and aldermen, that it was necessary for the health of the inhabitants, to proceed in the execution of the plan ; and that in pursuance of that determination the filling up of another portion of the creek, viz. from Ann Street to Hanover Street, was undertaken, and that while this part of the work was proceeding the present action was commenced.
Upon these facts, which were abundantly proved at the trial, we are of opinion that a full defence has been made out, and that there is no legal ground on which the verdict can be sustained.
It has not been denied, nor can it be, that the mayor and aldermen are clothed with legislative powers and prerogatives to a certain extent, and that they are fully empowered to adopt measures of police, for the purpose of preserving the health, and promoting" the comfort, com enience and general *198 welfare of the inhabitants within the city. Among these powers no one is more important than that for the preservation of the public health. It is not only the right but the imperative duty of the city government, to watch over the health of the citizens, and to remove every nuisance, so far as they may be able, which may endanger it. And they have necessarily the power of deciding in what manner this shall be done ; and their decision is conclusive, unless they transcend the powers conferred by the city charter, or violate the constitution.
It is clear then that the city government had the right to remove the nuisance complained of by filling up the creek, unless they thereby unlawfully interfered with private property ; and that they did not so interfere, we think is very manifest. The measure was a mere health law or regulation, and every citizen holds his property subject to such regulations. Police regulations to direct the use of private property so as to prevent its proving pernicious to the citizens at large, are not void, although they may in some measure interfere with private rights without providing for compensation. This principle was settled in the case of Vanderbilt v. Adams, 7 Cowen, 349, and in Stuyvesant v. The Mayor, &c. of New York, 7 Cowen, 588. And the counsel for the failing party in the latter case, admitted that the principle was too clear to be questioned. “ The contrary doctrine,” says the court, in the same case, “ would strike at the root of all police regulations.” The order of the mayor and aldermen stands on the same footing as quarantine and fire regulations, and if by such regulations an individual receives some damage, it is considered as damnum absque injuria. The law presumes he is compensated by sharing in the advantages arising from such beneficial regulations. Dore v. Gray, 2 T. R. 358; Governor, &c. v. Meredith, 4 T. R. 794.[1]
But it is true, undoubtedly, that the property of a private individual may be appropriated to public use, in connexion with measures of municipal regulations; and in such case compensation must be provided for, or the appropriation will be unconstitutional and void.
*199 But it does not appear by the evidence reported, that any property of the plaintiff has been appropriated to public use, or taken by the city authorities, within the meaning of the constit.utional prohibition. It does not appear that the plaintiff has acquired any right to boat navigation in the creek. It does not appear that the creek was. ever an arm of the sea ; and if that did appear, it does not appear that in its natural state, it was navigable so far up as the plaintiff’s messuage. And furthermore, it does not appear that the plaintiff has acquired any right to navigate the creek, by user, or under the indenture of 1807 between the town of Boston and the proprietors of the Boston Mill Corporation. The report states, that it did not appear that the plaintiff, or his tenants, or his servants, had ever in any one instance used the creek for that purpose. And certainly no such right, was granted to him by the indenture. This indenture provided for filling up the mill pond and ascertaining the proportions of property to be héld by the town and the proprietors respectively ; and the Mill creek, and such other canals as might be agreed to be kept open for the passage of boats, were excepted from the operation of the general provisions of the indenture. This exception however does not amount even to a license to the plaintiff and the other abutters, to navigate the creek and the canals. But as the creek and canals were in fact kept open for the purpose of boat navigation, there was an implied license to every one so to use them, but this was not a perpetual license which could be pleaded as a grant or a dedication to the public ; and no use of the creek and canals while they were permitted thus to remain open, however long continued, would give to any individual a prescriptive right. The plaintiff therefore gained no right by using the creek for the purposes of a drain, &c. ; the use was not adverse. But besides, there does not appear to be any proof thát the plaintiff has been obstructed in the use of the creek for this purpose. In the part filled up and completed from Marginal Street to Ann Street, a large common sewer was left for the purpose of carrying off the contents dis charged from the drains of the adjoining buildings. And no doubt the common sewer will be continued as far as the creek may be filled up.
*200 Only one further question remains. The plaintiff complains ^at the creek was not filled up with reasonable diligence and despatch, and that by the negligence of the defendants’ agents the creek had become very offensive, so as to be a great nuisance ; and this claim is supported. by the jury, and probably this is the only ground on which damages were awarded.
As the declaration is framed, it is quite clear that the verdict cannot be maintained on this ground. The nuisance caused by the defendants, if any, was a public nuisance, and an action in the name of an individual cannot be supported. unless he can prove that he had received some special damage. And as this special damage is the gist of the action, it must be specially set forth in the declaration.
This defect may be hereafter cured by an amendment, but the plaintiff’s counsel will do well to consider whether any amendment can avail them, as by the report of the cáse it does not appear that the plaintiff has suffered any special injury. It is averred that Newcomb, the tenant, has refused to pay his accustomed rent, but he is liable to pay, so long as he continues to occupy, and he can claim no reduction by reason of any unlawful obstruction caused by a third" party. It is also averred that he threatens to quit, but whether he will quit does not appear. He had not quitted when the action was brought, and the plaintiff cannot recover quia timet.
JV*eto trial granted.

 See Austin v. Murray, 16 Pick. 126.